**Opinion filed February 10, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00062-CR

_____

## VINCENT ALLEN DAWSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**
**Taylor County, Texas**
**Trial Court Cause No. 1-415-19**

## M E M O R A N D U M   O P I N I O N

Appellant, Vincent Allen Dawson, was charged by information with driving while intoxicated with a blood alcohol content (BAC) of 0.15 or more, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04(d) (West Supp 2021). Following an unsuccessful motion to suppress the BAC evidence, Appellant pled no contest pursuant to a plea agreement with the State. The trial court accepted the State's recommended sentence from the plea agreement and assessed Appellant's

punishment at 365 days in jail and a fine of $1,250. Pursuant to the plea agreement, the confinement portion of the sentence was suspended, and Appellant was placed on community supervision for twenty-four months. In four issues, Appellant challenges the trial court's denial of his motion to suppress and claims that he received ineffective assistance of counsel. We affirm.

*Background Facts*

On February 3, 2019, Officer Michael Mason of the Abilene Police Department observed, from the other side of an intersection, Appellant's vehicle stopped at a red light in Taylor County, Texas, with no turn signal on. A second Abilene police officer, Greg Young, was in a separate patrol car positioned directly behind Appellant's vehicle at the intersection. Both officers observed Appellant's vehicle inch forward, with the right turn signal coming on immediately before the vehicle made a right turn at the red light. Officer Mason then initiated a traffic stop on the basis of the driver's failure to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011). Officer Young assisted Officer Mason with the traffic stop.

Appellant was the driver and sole occupant of the vehicle. During initial questioning, Appellant's answers were strange, and his speech was a little slurred. Appellant's eyes were glazed over and he had difficulty answering questions and struggled to find his driver's license and insurance card. Officer Mason instructed Appellant to exit his vehicle and, once outside the vehicle, Appellant appeared to stumble a little. Officer Mason detected the odor of alcohol on Appellant's breath. Appellant refused or was unable to answer Officer Mason's request to perform standardized field sobriety tests and refused to let Officer Mason take a sample of his breath or blood to check for the presence of alcohol. Officer Mason then requested a search warrant for a sample of Appellant's blood and submitted an

affidavit in support of the request. The requested search warrant was granted and Appellant was taken to a hospital to draw a sample of his blood. The blood draw revealed that Appellant's BAC was 0.18.

Appellant filed a motion to suppress the BAC evidence on the basis that the initial traffic stop was illegal because it was not supported by reasonable suspicion. The trial court denied Appellant's motion to suppress. Appellant subsequently pled no contest in exchange for an agreed-upon sentence of confinement for 365 days in jail, suspended on the condition that Appellant abide by the rules of community supervision for two years and pay a fine of $1,250.

Appellant subsequently moved for a new trial on the grounds of ineffective assistance of counsel. Appellant argued that his trial counsel did not advise him that a jury could disregard the BAC evidence if the jury were to find that it was illegally obtained. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2018). He also argued that his trial counsel was ineffective for not advising him that he could have received a punishment of community supervision even if he had elected to take his case to trial and was convicted by a jury. Lastly, he argued that his trial counsel was ineffective for failing to impugn the credibility of Officer Mason by showing dash camera or body camera footage in which Officer Mason can purportedly be heard stating that Officer Young observed the violation. According to Appellant, this implied that Officer Mason did not see the violation, contrary to his testimony at the hearing on the motion to suppress and his affidavit in support of his request for a warrant to take a sample of Appellant's blood. The trial court denied Appellant's motion for new trial.

Appellant now brings this appeal, arguing that the trial court erred when it denied his motion to suppress and reasserting the three ineffective-assistance-of-counsel claims he advanced in his motion for a new trial.

*Discussion*

*I. Issue One – The trial court did not err in denying Appellant's motion to suppress the BAC evidence seized as a fruit of the traffic stop.*

A. *Standard of Review*

"We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016) (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). The trial judge 'is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony' when entertaining a motion to suppress." *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007) (quoting *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)). "We review de novo, however, whether the facts are sufficient to give rise to reasonable suspicion in a given case." *Furr*, 499 S.W.3d at 877 (citing *Crain*, 315 S.W.3d at 48–49). When, as in this case, the trial court does not make express findings of fact, "we view the evidence in the light most favorable to the trial court's ruling and will assume it made findings that are consistent with its ruling and that are supported by the record." *Id.* (citing *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)). We will affirm the trial court's ruling if it is correct under any applicable theory of law. *Id.* (citing *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013)).

B. *Analysis*

An officer must have reasonable suspicion to conduct a traffic stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Reasonable suspicion to detain a person as part of a traffic stop exists when an officer has "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to

4

reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Furr*, 499 S.W.3d at 878 (quoting *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013)). "The question . . . is not whether [A]ppellant was guilty of the traffic offense but whether the [officer] had a reasonable suspicion that []he was." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). This is an objective standard that requires us to look to the totality of the circumstances, "including the cumulative information known to cooperating officers at the time of the detention." *Id.* (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)).

Here, Appellant claims that the trial court erred in denying his motion to suppress the BAC evidence because Officer Mason did not have a reasonable suspicion to conduct the traffic stop in the first place. For the reasons expounded upon below, we cannot agree.

At the hearing on Appellant's motion to suppress, Officer Mason and Officer Young both testified that they observed Appellant commit a traffic violation by failing to have his right turn signal on continuously for at least the last 100 feet of his vehicle's movement before he turned right. *See* Transp. § 545.104(b). The State did not offer footage from either officer's dash camera or body camera at the hearing, opting instead to rely solely upon the testimony of Officers Mason and Young. Appellant's trial counsel also had possession of body camera and dash camera footage and chose not to introduce those videos. Because Appellant did not testify, nor did others on his behalf at the hearing on the motion to suppress, no evidence was presented to the trial court that was contrary to the officers' testimony; therefore, no disputed fact existed. *Madden v. State*, 242 S.W.3d 504, 510, 515 (Tex. Crim. App. 2007). We note, however, that Appellant's trial counsel suggested during his cross examination of the officers that Appellant may have decided to change his direction of travel while stopped at the intersection.

On appeal, Appellant argues that "[O]fficer Mason did not observe Appellant's alleged failure to signal a right turn 100 feet prior to the intersection" but, rather, "merely observed from across the intersection that Appellant's turn signal was not on when he was stopped at the red light, but was turned on before Appellant turned right on red." Appellant mischaracterizes the law by asserting that there is a requirement that the officer must continuously *observe* a motorist for 100 feet prior to making a turn before determining that a violation of Section 545.104(b) occurred. This is essentially a straw man argument—to argue that Officer Mason did not observe Appellant violate the law, *as mischaracterized*. The State counters that the law, as correctly stated, requires the operator of a vehicle to signal their intent to turn "continuously for not less than the last 100 feet of movement of the vehicle before the turn." TRANSP. § 545.104(b). The officers' observation of Appellant making a turn without a turn signal being displayed *at some point within 100 feet* prior to making the turn is sufficient to conclude that the turn signal display was not continuous and to overrule Appellant's first issue. *See Wehring v. State*, 276 S.W.3d 666, 671 (Tex. App.—Texarkana 2008, no pet.) (affirming trial court's denial of motion to suppress because, "in failing to signal his intent to turn when entering the turn lane, and [t]hen actually making the right turn, [the defendant] committed a traffic violation[,]" and by doing so "in the presence of a peace officer, the detention [was] reasonable").

The trial court made no express findings of fact. Therefore, construing the evidence in the light most favorable to the trial court's ruling, we understand that Officer Mason *did* observe Appellant's vehicle stopped at the red light with no blinker on before finally putting on his turn signal and turning right from a complete stop. Thus, the record indicates that the officer who conducted the traffic stop also observed Appellant violate Section 545.104(b). Evidence of reasonable suspicion

was therefore presented, without evidence to the contrary, during the motion to suppress.

The State also emphasizes that it was not necessary to prove that a violation actually occurred but, rather, only that Officer Mason was reasonable in his belief that a traffic violation occurred.[1] This is certainly true as well. *See Jaganathan*, 479 S.W.3d at 247 (explaining that the dispositive question "is whether the facts . . . made it unreasonable for the [officer] to think [the appellant] was violating the law"). The State argues that, even if Officer Mason had not personally observed Appellant's traffic infraction, he still would have had reasonable suspicion that the infraction took place by relying on Officer Young's firsthand observation of the infraction. The State emphasizes that this is an articulable fact available to Officer Mason and that "a rational inference from specific articulable facts is exactly what the reasonable suspicion standard requires." We agree.

The Court of Criminal Appeals has made it clear that "the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler*, 348 S.W.3d at 914. Thus, even if Officer Mason had not personally observed Appellant's traffic infraction—despite the record indicating that he did so observe—he would have had reasonable suspicion that Appellant had committed the infraction based on Officer Young's firsthand observation of it.

For all of these reasons, we hold that the State presented evidence of a reasonable suspicion sufficient to justify the initial traffic stop.[2] As such, we cannot

---

[1]See, footnote [49], *infra*.

[2] Nothing in this opinion should be interpreted as a comment on the application of the statute in the myriad circumstances that may arise at controlled intersections.

hold that the trial court erred in denying Appellant's motion to suppress the evidentiary fruits of that stop. We overrule Appellant's first issue.

## II. Issues Two, Three, and Four: Ineffective Assistance of Counsel – Denial of Motion for New Trial

### A. Standard of Review

"When, as here, ineffective assistance claims are raised in a motion for new trial, rejected by the trial court, and reasserted on appeal, we 'analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial.'" *Minassian v. State*, 490 S.W.3d 629, 641 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). "We will not reverse the trial court's denial of a motion for new trial absent an abuse of discretion." *Cummings v. State*, 401 S.W.3d 127, 132 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by* TEX. R. APP. P. 21.8(b), *as recognized in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007)). "We view the evidence in the light most favorable to the trial court's ruling, deferring to its credibility determinations, and we presume all reasonable factual findings that could have been made in support of the trial court's ruling." *Id.* Indeed, we will only find that the trial court abused its discretion if "no reasonable view of the record could support its ruling." *Id.*

### B. Analysis

To prevail on his claims of ineffective assistance, Appellant must satisfy a two-part standard. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). First, Appellant must show that trial counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892–93. To establish deficient performance, a defendant must show that counsel's representation was objectively

unreasonable based on "prevailing professional norms." *Id.* at 893 (quoting *Strickland*, 466 U.S. at 688). Second, Appellant must show that trial counsel's deficient performance prejudiced his defense. *Id.* To establish prejudice, a defendant must show a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Strickland*, 466 U.S. at 693–94. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

We assess counsel's performance in light of all of the circumstances and apply a strong presumption that counsel's representation fell within "the wide range of reasonable professional assistance." *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 688–89). To overcome this presumption, a defendant must establish that, under the circumstances, counsel's action could not be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

> *Issue Two – There were no issues of fact for the jury to resolve with respect to the traffic violation or stop; thus, Appellant was not entitled to an instruction under Article 38.23. Therefore, counsel did not render ineffective assistance for failing to advise Appellant of an instruction to which he was not entitled.*

In his second issue, Appellant asserts that his trial counsel rendered ineffective assistance because counsel did not advise him that he could relitigate the issue of reasonable suspicion for the traffic stop before a jury and that the jury could disregard the BAC evidence if the jury concluded that it had been illegally obtained. In other words, Appellant asserts that he would not have pleaded no contest but for the fact that his trial counsel failed to advise him on the availability of a jury instruction under Article 38.23. At the hearing on Appellant's motion for a new trial, his trial counsel testified that he did not remember whether he discussed Article 38.23 with Appellant. Appellant testified, however, that his trial counsel *did*

9

tell him they could argue the legality of the traffic stop to the jury but that he did not explain that the jury may then be permitted to disregard the BAC evidence.

The State argues, however, that it makes no difference whether Appellant's trial counsel advised Appellant on the possibility of an Article 38.23 instruction because Appellant has failed to present any disputed fact issue that could have entitled him to such an instruction. Indeed, the State points out that "[n]o testimony or evidence was presented at either the suppression hearing or at the motion for new trial showing a disputed fact issue as regards the traffic stop." The State argues, therefore, that "[t]he legality of the stop was a question of law, which does not merit an Article 38.23 instruction." We agree.

Article 38.23 of the Texas Code of Criminal Procedure, entitled "Evidence not to be used," states:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

CRIM. PROC. art. 38.23(a). The Texas Court of Criminal Appeals has clarified the applicability of this law, explaining that a defendant must demonstrate the following three conditions before he is entitled to a submission of a jury instruction under Article 38.23(a):

(1) The evidence heard by the jury must raise an issue of fact;

(2) The evidence on that fact must be affirmatively contested; and

(3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

10

*Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). "If there is no disputed *factual* issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Id.* (emphasis added). However, "if there is a genuine dispute about the existence of one or more . . . historical facts and such a fact's existence is material to the stop's legality, article 38.23(a) entitles the defendant to have the fact's existence determined by the jury." *Mills v. State*, 296 S.W.3d 843, 846 (Tex. App.—Austin 2009, pet. ref'd). But "if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Madden*, 242 S.W.3d at 510. "To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question." *Id.* at 513. "[Q]uestions on cross-examination cannot, by themselves, raise a disputed fact issue. There must be some affirmative evidence to raise a fact issue." *Id.* at 515.

The record before us is devoid of any dispute as to a material fact that could have had an impact on the legality of Officer Mason's initial traffic stop. Rather, the dispute exclusively surrounded the legal significance of undisputed facts. Namely, Appellant averred that Officer Mason did not have reasonable suspicion to detain Appellant because he only observed Appellant stopped at the red light with no blinker on but did not observe Appellant's vehicle when it was 100 feet away from the stoplight. As noted above, we reject this straw man argument. If Appellant's turn signal was not on *continuously* for the last 100 feet of his vehicle's movement before he made his right turn, then he violated Section 545.104 of the Transportation Code. Officer Mason observed Appellant's vehicle failing to signal a turn as far within that 100-foot window as it could possibly be: namely, stopped at the stop light itself. Thus, the undisputed evidence presented to the trial court was that Officer Mason observed Appellant commit a traffic infraction sufficient to justify the traffic

11

stop when Appellant made his right turn. Appellant unsuccessfully disputed the legal significance of an undisputed fact but did not present evidence to dispute any material factual question. Therefore, the record before us contains no material factual question that would have entitled Appellant to a jury instruction under Article 38.23 had he elected to proceed to trial in lieu of the State's plea offer.

We conclude, based on the record before us, that "because there was no fact issue material to the lawfulness of [A]ppellant's detention . . . [A]ppellant w[ould] not [be] entitled to an instruction under article 38.23." *Cummings*, 401 S.W.3d at 132 (citing *Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.)). Appellant's trial counsel, of course, could not have rendered ineffective assistance by failing to advise Appellant on an instruction to which he would not have been entitled. *See Griffis v. State*, No. 05-18-00222-CR, 2018 WL 6074702, at *3 (Tex. App.—Dallas Nov. 21, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that "[b]ecause appellant was not entitled to an article 38.23 instruction, his counsel's performance cannot be considered deficient for failing to request one" (citing *Hardin*, 951 S.W.2d at 211)); *see also Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) (explaining that "[r]equesting a jury instruction to which one is not entitled, merely for the sake of making the request, is not the benchmark for a competent attorney"). Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for a new trial on that basis, and we therefore overrule Appellant's second issue.

> *Issue Three – Appellant's trial counsel did not render ineffective assistance of counsel for failing to advise Appellant that if a jury were to convict him at trial, he could still be placed on community supervision.*

In his third issue, Appellant claims that his trial counsel rendered ineffective assistance because counsel failed to inform him that the jury could recommend probation if he took his case to trial and lost. Appellant advanced this assertion in

12

his testimony at the hearing on his motion for new trial. Appellant also testified that his trial counsel told him that "[i]f it goes to trial, we're screwed,"[3] ostensibly interpreting this statement not as a prediction of his odds of success and acquittal but, rather, as an indication that a jury would not be allowed to assess punishment with a probated sentence. Appellant's trial counsel testified that, as a matter of habit and based on his memory of this particular case, he is confident that he explained the range and options of punishment, including the possibility of probation, if Appellant opted to have a jury trial. Appellant denied this during the hearing on the motion for new trial.

The State emphasizes the testimony of Appellant's trial counsel, in which he agreed that it was his "habit" to make sure that his clients are informed that when they do not have a criminal record, they can get probation if they go to trial. The State further argues that since the evidence on this issue was simply a matter of Appellant's testimony versus his trial counsel's testimony, "[t]he trial court accordingly made a credibility determination, which [wa]s in its sole discretion as factfinder." We hold that Appellant has failed to meet either the prejudice prong or the deficient performance prong, both of which are necessary to prevail on a claim of ineffective assistance of counsel.

"[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The focus then is on the defendant's decision making." *Miller v. State*, 548 S.W.3d

---

[3]It does one's client no good to give him false hope instead of being painfully honest about the prospects of success at trial. *See Ex parte Wilson*, 724 S.W.2d 72, 73-74 (Tex. Crim. App. 1987) (addressing defense counsel's duties with respect to advising his client so that client can make an informed decision).

497, 499 (Tex. Crim. App. 2018) (citing *Lee*, 137 S. Ct. at 1966). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies[,]" but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

Here, the evidence from the hearing on Appellant's motion for new trial supports the trial court's finding that Appellant's trial counsel did advise Appellant about the full range of punishment he might receive from a jury. Appellant's trial counsel testified that he was confident that he "went over what the jury could do to [Appellant][,] [w]hether it be probation[,] [w]hether it be jail time[, or] [w]hether it be, in theory, nothing except a suspended license." He further indicated that it was his professional "habit to make sure clients are informed that when they don't have a record," like Appellant in this case, "they . . . can get probation if [they] go to trial." Appellant contradicted these claims in his own testimony, asserting that his trial counsel never told him that if he went to trial he could still receive community supervision if the jury convicted him. Notably, however, Appellant's testimony was equivocal as to whether he would have elected to go to trial if he had known that a jury *could* recommend that he be placed on community supervision. Indeed, Appellant testified that he elected to take the State's plea offer because he "[did not] know anything about people in jail" and "[could not] stay in that place." In other words, notwithstanding Appellant's postjudgment *ipse dixit* that he would have elected to take his case to trial if he had known a probated sentence would be *possible* in the event that the jury returned a guilty verdict, the record before us does not support this contention. *See Lee*, 137 S. Ct. at 1967. Rather, the record suggests that Appellant was thoroughly motivated to avoid spending time in jail. Appellant has failed to demonstrate that he would have opted for a minute chance of acquittal plus the possibility of community supervision in the event of conviction over the

14

*guarantee* in the State's plea offer of community supervision in lieu of jail time. Appellant has therefore failed to establish prejudice. This alone is sufficient to dispose of this issue.

However, the record also contains conflicting testimony between Appellant and his trial counsel regarding what was said during discussions following the trial court's denial of Appellant's motion to suppress. "The trial court, as the sole finder of fact, was free to resolve this conflict in the testimony. . . . [And thus] we must presume that the trial court resolved the conflict in [counsel's] favor[.]" *State v. Diaz-Bonilla*, 495 S.W.3d 45, 53 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In other words, the trial court presumably concluded that Appellant's trial counsel *did* advise Appellant on the availability of community supervision following a conviction at a jury trial. The record supports this conclusion, and the trial court was well within its discretion in reaching this conclusion based on its determination of the credibility of Appellant's and trial counsel's conflicting testimony. *Id.* Thus, in addition to failing to prove prejudice, Appellant has failed to establish that his trial counsel's performance was deficient. This too is sufficient on its own to dispose of Appellant's third issue.

For the reasons articulated above—Appellant's failure to show deficient performance and/or his failure to show prejudice—we hold that Appellant has not demonstrated that his trial counsel rendered ineffective assistance. The trial court did not abuse its discretion in denying Appellant's motion for a new trial on this basis. Appellant's third issue is overruled.

*Issue Four – Appellant's trial counsel did not render ineffective assistance by not introducing video evidence for the purpose of potentially undermining the credibility of the officer who conducted the traffic stop; the video affirmatively depicted Appellant committing the turn signal offense.*

In his fourth issue, Appellant argues that because some of the dash camera or body camera footage in his trial counsel's possession purportedly contradicts Officer Mason's claim that he personally observed the traffic infraction, counsel's failure to introduce this footage at the motion-to-suppress hearing to impugn Officer Mason's credibility prejudiced Appellant. Appellant argues that because Officer Mason's testimony was the primary evidence supporting the State's case, had trial counsel undermined the officer's credibility, it may have resulted in a different outcome at the hearing on his motion to suppress.

The State counters that the lawyer's decision to discount the video footage was an exercise of sound trial strategy because it would have been more damaging than helpful to Appellant. The State also argues that Appellant's trial counsel had no reason to introduce the video evidence since (1) "[n]either the trial court nor this court can determine what it would have shown or its usefulness in impugning the credibility of Officer Mason,"[4] and (2) "it was not necessary for Officer Mason to have himself witnessed the violation for a valid stop. . . . [R]easonable suspicion only requires that an officer reasonably believe that an offense has occurred, is occurring, or soon will." In other words, the State argues that even if Officer Mason did not observe the infraction himself, Officer Young's observation of the traffic violation would have been "sufficient to support Officer Mason's stop." We agree.

First, based on the record before us, it appears that, even assuming the video footage contained statements from Officer Mason that contradict parts of his trial

---

[4]The video footage was not offered into evidence by either party.

testimony or his affidavit for a search warrant, offering the videos into evidence at the motion-to-suppress hearing would have cut off Appellant's nose to spite his face. Appellant's trial counsel testified that he elected not to offer the dash camera or body camera footage at the hearing on Appellant's motion to suppress as a matter of trial strategy. He testified that one of the videos "would have . . . show[n] [Appellant] stopped at the stop sign and then turning on his blinker and then proceeding[,]" in clear violation of Section 545.104(b) of the Transportation Code. He testified that the other video would have depicted Appellant "acting strangely[,] . . . slurring his words, and . . . taking a slight stumble." According to Appellant's trial counsel, the second video made it "pretty apparent" that Appellant was "inebriated." In other words, Appellant's trial counsel testified that the videos would have done more harm than good in the defense of Appellant.

The trial court, as the sole finder of fact at the hearing on Appellant's motion for new trial, was at liberty to make all credibility determinations for testifying witnesses and, as such, was permitted to discount the testimony of Appellant and credit that of his trial counsel. *Diaz-Bonilla*, 495 S.W.3d at 53. Thus, the trial court was well within its discretion in believing trial counsel's representations that the videos in question would have depicted Appellant violating Section 545.104(b) or would have revealed that Appellant was noticeably inebriated when the traffic stop took place. *See id.* Thus, "the trial court could reasonably have found that [Appellant] failed to show that his counsel's performance was deficient because [Appellant] did not overcome the presumption that the action he challenged might be reasonable trial strategy." *Jackson v. State*, No. 11-06-00127-CR, 2008 WL 391297, at *5 (Tex. App.—Eastland Feb. 14, 2008, pet. ref'd) (not designated for publication).

Second, only a small portion of one of the videos was played by Appellant at the hearing on his motion for new trial, and it did not actually contradict the

testimony of Officer Mason or the representations he made in his affidavit requesting a search warrant. Rather, it appears that the segment of video that was played to refresh trial counsel's memory—during the hearing on the motion for new trial—merely supports the undisputed fact that Officer Young personally observed the traffic violation; it does not, however, demonstrate that Officer Mason did not *also* observe the infraction. The video footage that Appellant's trial counsel failed to offer at the motion-to-suppress hearing not only may have had the *net* effect of being harmful to Appellant but also may not have had the potential impeachment value that Appellant supposes.

Finally, Appellant does not dispute that Officer Young personally observed Appellant violate Section 545.104(b). Thus, even if the video footage might have contradicted Officer Mason's testimony that *he* personally observed the infraction, the outcome of the motion-to-suppress hearing would not have been different because Officer Young's undisputed observation of the infraction was sufficient on its own to justify Officer Mason's traffic stop under the reasonable suspicion standard.

We hold that there is no reasonable probability that the outcome of the motion-to-suppress hearing would have been different had Appellant's trial counsel submitted the dash camera or body camera footage into evidence. Nor do we see how trial counsel's decision not to offer the videos into evidence fell outside of "the wide range of reasonable professional assistance." *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 688–89). As such, we cannot say that trial counsel provided ineffective assistance when he did not offer the videos into evidence on Appellant's behalf at the hearing on the motion to suppress. The trial court did not abuse its discretion in denying Appellant's motion for a new trial on this matter. We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


February 10, 2022

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.